May it please the Court, my name is Richard Lev. I represent the appellants. The District Court erred in granting summary judgment. There is no basis for granting summary judgment here. Whether a mark is generic is a question of fact. The USPTO approved my client's application to register Gruyere as a certification mark, and the defendants opposed that application. By opposing that application, they assumed the burden of proving that Gruyere is generic. If the defendants are unable to meet that burden of proving it as generic, the mark will be registered. So what does this burden entail? To show that a mark is generic, the statute has to be followed, and the statute says the test for genericism is what is the primary significance of the mark. Defendants had the burden of showing that the name Gruyere is perceived by a majority, because we are talking about the primary significance, is it perceived by a majority of consumers to mean a type of cheese that can be made anywhere, as they claim, or does it mean a cheese that comes from my clients, namely the groups in Switzerland and France. They admit that majority understanding is the test for genericness. So they had the burden of showing that there is no factual dispute as to what a majority of consumers believe, and they failed both to show what a majority of consumers believe and to show that there is no factual dispute. They failed on both counts. First, they failed to prove that a majority of consumers understand Gruyere as generic. They don't dispute that a survey is the preferred method of showing genericness in this court. Yet they offer no excuse for failing to provide one. They not only failed to... It's not the only method, but it's definitely the preferred method. And they also offered no evidence of consumer testimony. So the evidence that they did produce is ambiguous and ambivalent. And they also failed, and this is important, they failed to acknowledge the Supreme Court statement in the Booking.com case that because genericness depends on consumer to consumers or a meaning that has changed over time. And they don't cite a single case where a court in this circuit has granted summary judgment on genericness where the mark was alleged to have become generic over time. Here the district court said that the meaning of the mark Gruyere has changed over time, and the district court found that the mark means different things to different people. When it comes to changing over time, do you agree that if a mark becomes generic, there's no going back? It can't become distinctive again? Sure. It doesn't happen often, but it has. The mark Singer was somebody's name. It became a trademark, then it became generic, and now it's a trademark again. It can happen. If it's a term... But all the cases they cite are cases where the mark was always generic. It was generic from the beginning, like freebies for goods that are free or crab house for a seafood restaurant that specializes in crabs. But this case involves what the district court said was a case of genericity. It was a good mark. It represented cheese made in Switzerland and became generic over time. Not a single case do they cite where this court has found genericity on summary judgment. In fact... What are the factual findings that you contend that the court made improperly since this is at the summary judgment stage? The factual findings that the court made are... Well, first off, they didn't make... The court didn't make any finding as to what a majority of consumers understand the term Gruyere to mean. The other factual issue the court made was that the court seems to have accepted the other side's contention that you can just weigh the cheese. Which country produces more cheese under the name Gruyere? And the court made several factual issues in connection with that. First, they downloaded a spreadsheet from the U.S. Department of Agriculture that shows different categories of customs duties. Apparently, there's a customs duty that has in the name of the customs category Gruyere processed cheese. Why it says that, we don't know. But that's not how the cheese is labeled. The district court jumped to the conclusion that said every cheese imported under that customs category is labeled Gruyere. There was no evidence of that. And the court then jumped to the conclusion that millions of pounds and the majority of cheese comes from places like Netherlands and Germany and Austria and Egypt and Czech Republic. Where are the labels that say that? Where's the label that says this is Gruyere cheese from the Czech Republic or some of these other countries? That was clear error of fact. The court also made... This would be a bench trial, right, if you got beyond summary judgment, where the court would be the fact finder. So what's the practical difference in the court finding facts at this stage versus a bench trial? Well, the practical difference is first, there has to be... First, the court can't grant summary judgment here. There are errors of fact and errors of law. And there are facts and disputes. So the court can't grant summary judgment. What happens next, we don't know. I mean, obviously, these factual findings have to be reversed. And if we get a decision from your honors that these are errors of fact and law, then we go back to the... Would we be... Can we say that there are errors of fact and law? Or would we be simply reversing because it was improper for the court below to make factual findings at the summary judgment stage? You can do several things. First, you can say the court could not have granted summary judgment because there are issues of fact and dispute. There's issues of fact as to what a majority of consumers think. There's issues of fact as to consumer perception. So first off, there shouldn't be any summary judgment. But in the course of that, the court made errors of law. The court said the FDA regulation permits the use of Gruyere on this cheese. The FDA regulations don't permit anything. They just say that if you put Gruyere on cheese, you have to make it in accordance with our standards. Okay, fine. But nobody... It doesn't permit anybody to use Gruyere. That's a question of trademark law. And there was an error... Excuse me. It was an error of law for the district court to say that the FDA standard permits the use of Gruyere on this cheese. So that should be corrected. It was an error of fact for the district court to say that this spreadsheet they downloaded from the U.S. Department of Agriculture, all the cheese listed on that, all the cheese referenced on that spreadsheet is labeled Gruyere. That was an error of fact. So this court can say, A, summary judgment should not have been granted. B, the court below made errors of fact and errors of law. The one case... I just wanted to mention one thing. The one case that the party site, which involved this alleged process of genericide, is Glover against Ampac. In that case, the plaintiff sued for infringement of the trademark whitetail for knives. The defendant counterclaimed to cancel the mark on the ground that whitetail was generic for knives. And they put in evidence of third-party use, like they did here, of third-party use of whitetail. The plaintiff the defendants put on an expert witness who identified these third-party uses. And this court said, still, that mark is not generic. The expert witness acknowledged, I'm quoting from the decision now, the expert witness acknowledged that he did not perform any consumer surveys and was not able to testify to the public's understanding of Glover's trademarks. So that's the same here. When genericize is an issue, when the issue is what do consumers believe over a passage of time, you've got to have evidence either in the form of a survey or consumer testimony or something to tell the court how consumers perceive this mark. The other thing is, the other issue is that the I guess when we use the phrase genericize, we're kind of, it's kind of assuming what consumers thought originally, right? The district court said, you know, this may have begun as a distinctive mark because this gruyere, you know, originally was made in this region. But the question for distinctiveness is not, was it exclusively made in this region as a fact, but is that what consumers understood? And so we're kind of assuming that at some point in American history, you know, Americans understood and believed that all gruyere came from this region, but that over time that belief changed. But there's really no evidence about what Americans believed, you know, however many decades ago, right? Well, everybody agrees that gruyere has been made since 1100 A.D. Yeah, but that's not the question for distinctiveness, is it? It's been made there since before there was a United States, before there was a Wisconsin, before there was a cheese industry in Wisconsin. Yeah, you're right. I'm just pointing out, this is not determinative of your case. I'm just pointing out an interesting oddity, I think, which is we're all assuming that you can show at some point in American history that, you know, the majority, the primary significance of the term was that gruyere was imported from Switzerland and France, but we don't have anything to prove that. We're really just talking about as of the date of this application, what is the primary significance in the U.S.? As of the date of now, as of the date of summary judgment of trial is the issue. Right. And I think that that's the process that the district court himself said was going on. It meant one thing, and now it means another thing. And there's been no case where that issue has been decided on summary judgment. The only things that have ever been decided on summary judgment are these marks like freebies or crab house, where they've always been generic. And then there's another factual issue is perception of these labels. There's a label by Boar's Head Cheese, which buys cheese in Wisconsin and labels it. They don't label it Boar's Head Wisconsin Gruyere. They label it Boar's Head Blanc Gruyere. They give it a French name, and they say it's old world tradition. Down at the bottom in the fine print it says Wisconsin. But the district court made a finding of fact that people will look at that label and see that it's made in Wisconsin. That's a finding of fact. That's an inference in favor of the other side, where on summary judgment it should be making an inference in my client's favor. That kind of thing, how do people perceive fine print on a label? That's not for summary judgment. The same with some of these other cheeses, where the country of origin isn't even shown on the front of the label. You have to flip it over and look at the fine print on the back to see where it's made. That's an issue of fact, and the court should not be saying as a matter of law that people will see this and see that it's made in Wisconsin. Similarly, the Wegmans grocery chain, which sells three kinds of Gruyere, intense, medium, and mild. The intense and medium come from Switzerland. The mild comes from Wisconsin. The labels are pretty much the same. The court said as a matter of law, people are going to understand that two of them come from Switzerland and one comes from Wisconsin. That's an inference in favor of the other side, not in favor of my client. That's a question of fact that has to be decided at trial. The other thing I would add is to the extent that expert testimony is needed, the date for selecting experts has passed. They don't have any expert testimony. It's too late for them to put in a survey. It's too late for them to put in any kind of expert testimony. Discovery is over, except for one, with one limited exception. I said they could take the deposition of my client's chief executive from Switzerland when he comes for trial. But aside from that, discovery is over. So they can't add to the record. The record is what it is. They just cannot support their case. I just want to talk about the evidence that they put in in place of a survey. The preferred evidence in this court is a survey. Less preferable would be things like dictionaries and press articles. The dictionaries, even the other side concedes that the dictionary evidence supports both sides. We have the Encyclopedia Britannica, which says Gruyere is made in Switzerland. We have the Comprehensive Oxford Companion to Cheese, which says it's made in Switzerland. It's one of the greatest cheeses in the world. They dismiss that. They say, well, it's a European cheese guide. It's published in New York City. It's not a European cheese guide. And then the articles they put in the newspaper articles, these are old articles dating back to before, more than nine years ago, before Amy Roth stopped using Gruyere. A significant producer of what they used to call Gruyere stopped nine years ago. And yet they continue to say they still use Gruyere. That's not true. Okay. I think I'll reserve the rest of my time unless you have any additional questions. Okay. Thank you, Mr. Lee. Saharsky. Yes. Good morning, Your Honors. My name is Nicole Saharsky. I represent the U.S. Dairy Groups today. It's undisputed that for decades U.S. cheese makers, starting with the Roth Company, have been making and selling Gruyere in the United States. That dates back to the 1980s. And also for decades there have been massive amounts of non-Swiss and non-French Gruyeres imported into the United States and sold as Gruyere. And we provided data on that in the record, as well as labels to show exactly what consumers are seeing when they go into the store to buy cheeses, including Gruyere. And based on all of that voluminous evidence in the record, first the Trademark Trial and Appeals Board, and then the district court in this case found that Gruyere is generic for a type of cheese. The TTAB found no doubt on that score in a precedential opinion, which doesn't happen very often. And then the district court here at the summary judgment stage, applying the summary judgment standard, said this evidence is overwhelmingly one-sided, such that no reasonable fact finder could look at the state of the world as it exists in the U.S. marketplace today and find that Gruyere is limited only to this small region of Switzerland and France. And so, you know, one of the things that I want to address is the legal standard here, which the consortiums say is a majority of consumers survey type test. That's not correct. So the legal standard, which is in the statute, which I think is the starting point for all of us, this is in 15 U.S.C. 1064 Part 3, is the primary significance to the relevant public. And everyone agrees here that the relevant public are cheese consumers, people who buy cheese in the United States, whether it's retail, wholesale, restaurants, whoever else. And that primary significance standard is understood to be a look at, really, consumers as a whole and the whole marketplace. It's not understood as some type of numerical test that requires a consumer survey. It's really more of an overall totality type judgment, the kind of judgment that courts make by looking at a lot of different factors all the time. And there are some kind of classic sources of evidence that this court and other courts have looked to to figure out, like, what is the primary significance to the registered public. And two of those key sources of evidence are, you know, first of all, are others, other than the people claiming the mark, using this term in the marketplace for just a type of cheese in general. And we know that that's true, both with U.S. consumers. Is there a dispute of fact about genericness at this point that the district court can't resolve at the summary judgment stage? So the historical facts in terms of imports or labels, et cetera, there's no material dispute there about the numbers or how the labels look or anything like that. The thing that is disputed is the ultimate, really, legal question, which is does this all add up to genericness or not. And that is a factual determination for the court to make. It's one that's reviewed for clear error after the court, for example, makes that decision after a bench trial. But this court has said in many cases, actually, that even though the ultimate question of genericness, that how does it all add up, is a fact question to which the court gets deference, that it can be decided on summary judgment. And actually most of the cases from this court and the other courts of appeals were decided on summary judgment. So that includes the retail services case that we cited in our brief. It includes the Institute Nationale case, which involved the genericness of the wine product Chablis, which came from the Federal Circuit, pretty interesting and a case that's very similar to ours. It involves the Colt case from the First Circuit, which has to do with the type of firearm. The Booking.com case that this court decided that then went and was affirmed before the Supreme Court, that one was a genericness that was decided on summary judgment. So it's actually pretty well established that even though the ultimate question of is it generic is a fact question, that that often is decided on summary judgment when the court finds that the evidence is overwhelming one way or another. And so I think it helps to kind of look at what the court had before it in this case. Just going back to what I said are those classic sources of evidence, you've got massive amounts of U.S. Gruyere being produced since the 1980s, sold by the Roth Company as Gruyere in the United States. You've also got large amounts coming in, specific amounts documented in the record, with labels from companies like Boershead that brings it in from Germany, or also Dietzen-Watson, a company that brings it in from Germany, and saying that there are just these millions of pounds of Gruyere in the market every year. And the interesting thing is that even though that's been happening for decades, it wasn't until 2012 that just the Swiss consortium, not the French, just the Swiss, even did anything to try to control the use of that mark. And frankly, their efforts were really too little, too late, and just not very effective. They tried to get some producers to stop using the term Gruyere. Many refused. And then actually the thing that we think is telling and that the district court thought was telling is that they actually entered into a contract with the Roth Company, which is the huge producer of Gruyere in Wisconsin, and said that when they sell it to private label customers, like Wegmans or Trader Joe's or whoever else, that those companies can go ahead and label it as Gruyere. So this is evidence that's come up in other cases, like what is the person claiming the mark for themselves, like what is their conduct in the marketplace? And when their conduct in the marketplace is, go ahead and use this term for Wisconsin cheese, that's pretty good evidence that the mark isn't limited to just that specific cheese in that specific place of origin. And so, you know, when you've got not only the U.S. producers, the foreign producers, them, you know, them themselves saying, go ahead by contract and use Gruyere for this Wisconsin cheese, you also have, for part of that time, the Swiss consortium undercutting the French consortium and saying that French cheese doesn't count. So between the two of them, there's kind of a, there had been a historical dispute as to even what, in their view, the mark meant. And then you add that to, you know, the common usage evidence and the industry usage evidence that the court went through, just, I mean, really a voluminous amount of it. It just led the court to this inescapable conclusion that, you know, even if there were a couple dictionary definitions. What's your response to his argument about the fact that you didn't have a consumer survey? So this court has said in other courts that consumer surveys aren't required. They're just one possible source of evidence, and any competent evidence can be required. And actually, a lot of courts, including most recently several justices of the Supreme Court in the Booking.com case, have really cautioned the use of consumer surveys because of the ability to manipulate them and also because of that they often lead to a battle of the experts that courts put, like, kind of too much weight on them. I mean, in this case, we had these other really key sources of evidence that we thought were overwhelming in terms of just the flooding of the U.S. market since the 1980s and 1990s of the U.S. cheese labeled as Gruyere and as the foreign cheeses labeled as Gruyere. So under those circumstances, you know, we didn't think that a consumer survey was required. And, you know, this court has actually, even when there have been cases where there were consumer surveys, the court has rejected the survey. So it's not like the survey is, that would be like the Hunt Masters case, for example. That was about a mark called Crab House. Someone was trying to register Crab House. So, you know, the survey is just one piece of evidence. And here, you know, the court was finding that all the evidence was really pointing in the same direction. To follow up with Judge Thacker's question to you, you said at the beginning, you said it's the relevant consumer and, therefore, it's sort of a curated customer base who knows about the cheese and those things. I'm not one of those people in that relevant consumer base. But isn't that why surveys are more important? And you said battle of experts, but don't you need some sense of expertise in the genre of the cheese? And, you know, for example, you talk about going back to the 12th century, Switzerland and France. You know, it's sort of a connoisseur type market. Isn't that more of a need as opposed to something that's more generically so in this case? I mean, it's all of the relevant consumers. And there are some that are more sophisticated, like the large purchasers at, you know, restaurants who look for very sophisticated cheeses. There are some cheese consumers, like myself, when I go to the store, who are perhaps a little less sophisticated. But the question is, when they see the word gruyere, do they think that's a type of cheese? Or do they think it's cheese from only a particular place? And the labels that they see in the store and the way that various, like, competitors and the consortiums themselves are behaving in the marketplace is evidence of consumer understanding. I mean, it's not the case you can survey every single consumer in the U.S. So consumer surveys are every consumer of cheese, which is the relevant group here. So, you know, surveys have limitations. And I think that's why this court and a number of cases and other courts have looked to this, like, marketplace evidence of labels and the like. For example, there was this case that the court had a while back called Royal Crown Cola, and it had to do with Coke wanting to register zero, like for Coke Zero and the low or no calorie Coke products. And one of the things that the court looked to there was, like, evidence in the marketplace of who's using this zero mark, and lo and behold, it's not just Coke. It's kind of a widespread understanding for sodas. And so, you know, there are a lot of cases, I guess, that are decided without consumer evidence based on this more overall sense of what's happening in the marketplace and what consumers are actually seeing when they go into stores. You know, I'd also point the court, and this is a case from the Federal Circuit, but I think it's useful, it's the Institute Nationale case that was about Chablis, like the wine product Chablis and whether that's generic for a type of wine or whether that's just limited to a particular place. And there, you know, the kinds of evidence that the court looked at was, you know, what's out in the marketplace? What was the mark owner's own use of Chablis? Were they kind of taking efforts to protect the mark or were they using it in a generic sense? They also looked at some government regulations, which is another thing that the district court thought was a relevant factor here. And then they looked, for example, at the trademark registration history, which, you know, as we pointed out here, this isn't the first time that at least the Swiss Consortium has tried to register that Gruyere mark. And, of course, the PTO found that it was generic then. And as Judge Rushing pointed out, once a term becomes generic, it is very difficult, if not impossible, to have it become non-generic. That's something this court has said, for example, in the Booking.com case and in other cases. And so here, you know, starting in the 1980s and 1990s, you've got just this massive industry that's built up in the United States, you know, based on the hard work and ingenuity of the folks at the Roth Company in Wisconsin and then other places like the cheesemakers in Idaho, other companies in Wisconsin. And those folks have been making this product in the U.S. market and selling it for decades. And what the consortiums are asking for here would really just take this whole word off the table. It's an extraordinary thing that they want. You know, they already have this specific mark to say, you know, Gruyere from Switzerland, right? They can use this design mark to say Gruyere from Switzerland. But they want it to be the case that no one can use this word at all, even though it's been used for so long in the United States by all of these companies. And that's just an extraordinary thing that's just not justified on this record. The only other thing I might say is that, you know, this is something that's happened to a lot of cheeses, actually, that they were originated in some place like cheddar. They originated in Cheddar, England, or Colby, which originated a place in Wisconsin, or Gouda from the Netherlands that, you know, of course they started in a place, but over time it's been understood that they refer to a type of cheese. And that's what the district court said happened here. You know, he didn't say there was no evidence in the record to go to Judge Rushing's question about before 1980. So we don't know what U.S. consumers thought before 1980 about Gruyere or any other cheeses. But what we do know is that once there was this production in the U.S. and these other imports, that there, you know, came to be this understanding in the U.S. that, you know, despite their fairly limited efforts, that the consortiums, you know, just couldn't establish that it was that the word was limited to this particular place. And so, you know, what we're asking for here is really just to affirm the district court's grant of summary judgment. The district court issued a, you know, look through a voluminous record. We've got all the volumes of it here. That's just a summary. And went through the undisputed factual findings to the extent the consortiums are suggesting that the court found facts. The court, I think, was very careful as to say what was the facts that were undisputed. And the court was very careful to say, you know, I'm not saying, for example, that all the imported cheese is necessarily labeled this way, but here are the companies that provided me with data in the record, like Boar's Head, like Dietz and Watson, from the U.S. cheeses, like Wegmans. I mean, very specific numbers in the record. And he says that tells me that there's, that this non-Swiss and French cheese is just pervasive in the U.S. marketplace. And it has been for a while. And in light of that, plus all of this common usage evidence, plus the FDA recognizing through the standard of identity that this is just a very common cheese of a particular type in the United States, I just can't say as a reasonable fact finder that you could find that it's not generic. And by the way, if we were going to go forward, I would have to do a bench trial. And I just can't, I can't see the fact issue to decide. And that was really the consortium's burden here, you know, what is the genuine issue of material fact for trial other than the ultimate question of genericness. And I just don't think that they've identified one. There are arguments about the evidence, like, well, does it really show this, or kind of conclusory denials, like, we disagree. But the court said, you know, here's the evidence of genericness. Tell me what's on the other side and point me to the record citations. If they say the sky is blue and you say it's red, you know, tell me where you're joining issues so I know if I need to have a trial. And I think the problem for the consortiums here at the end of the day is that there just, there wasn't that joining of evidence. The historical evidence is, you know, there's really no material dispute on it. And in light of that, kind of seeing the decades of U.S. usage here, the court thought it was reasonable to grant summary judgment against the consortiums here. I'm happy to answer further questions if the court has them, but otherwise we'll just ask the court to affirm the judgment of the district court. Thank you. I may briefly respond. I wanted to start by talking about what counsel first said was the test for genericness. She said, this may not be word for word, but she said, it's an overall totality we have to look at. She said, it's a judgment that has to be made looking at a number of factors. That doesn't sound like summary judgment to me. That sounds like fact finding to me. That's what counsel is saying. She's saying you have to look at all the evidence and all the facts and then make a decision as to whether Greer has become generic. You can't do that on summary judgment where there's issues of fact and dispute and there's errors made in making those decisions. As Judge Gregory said, this is a specialty product, a connoisseur product. You can't decide whether this term has become generic on summary judgment without a survey, without any evidence as to consumer perception. Basically, their only reason for not having a survey is because they don't want a battle of experts. Well, that sounds like they don't want a trial. They don't really want to decide this issue and find out, has this cheese name become generic like some or is it not generic like others?  It would be difficult, in my view, to decide this even at a trial with expert witnesses, which is too late for it. To do it on summary judgment is just wrong. This is not a summary judgment case. Let me respond to some of the specifics of what counsel said. She talked about the Chablis case. The Chablis case involved a mark for wine, which is in the jurisdiction of the Bureau of Alcohol, Tobacco, and Taxing, it's called, which is specifically charged with geographic designations for wines. There are statutes in this country on geographic designations for wines. And Chablis has been held, and the BATF has said it's a semi-generic designation. And there are other registrations in the Patent and Trademark Office for wines that use Chablis in the name, and they've registered it with Chablis. So it's a totally different case. The FDA, which has standards for making cheese, has no jurisdiction over geographic designations. That's not their job. They don't know anything about what consumers know about the names of cheese and what the names of cheese means to consumers. That's not their expertise. As for whether Roth, the company in Wisconsin, ever said to stores, go ahead and use it, they never said go ahead and use it. They said don't use it. They were diplomatic. They didn't want to get into a trademark fight with their own customers. But they don't own the trademark. Roth in Wisconsin doesn't own the name Greer. That's owned by my clients, and they enforce it. They wrote to all these stores and said don't do that. Some of these stores complied. Some said we're waiting for the outcome of this case. Council mentioned some sort of dispute between France and Switzerland. The French side of the border now has the Greer designation, and they've been given rights in Europe. So they filed a new application where both parties are the applicants. And they have an agreement between them that Greer from France will be labeled Greer from France. Greer from Switzerland will be labeled Greer from Switzerland. And as to enforcement in the United States, that's the responsibility of the Swiss entity, which is much larger. Very little French Greer is actually imported into the U.S. Most of it is sold in the domestic market in France. So it's really not a significant factor. The last thing I would say is council is saying this word will be taken out of the vocabulary. That's not true. There's no need to use it. All the artisanal cheese makers who make award-winning cheese in the United States have no need to use Greer. They come up with other names, and they're perfectly happy, and they're proud of it. They don't need to use Greer. If this were a generic term that people needed to use in the United States, you would see XYZ Farms Vermont Greer or New Hampshire Greer or whatever. They don't do that. They come up with other names, and they're happy to do it. What would happen is that consumers, if this were declared to be generic, consumers would be harmed because the certification mark tells consumers that this name means the cheese is made in traditional methods in Switzerland or France, and the cheese has the characteristics of the region. It's handmade by these farmers who have been doing it for 900 years. That's what this certification mark tells consumers. If they have their way, and this becomes a generic term, then any factory, any place could make a bland, waxy, tasteless cheese and call it Greer. That would confuse and harm consumers. Thank you. Thank you. Thank you both, counsel, for your arguments. We can't come down and greet you, but know very much that we appreciate your being here and helping us with this case. I wish you well, and stay healthy. Thank you.
judges: Roger L. Gregory, Stephanie D. Thacker, Allison J. Rushing